```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TOWN OF OYSTER BAY,

                    Plaintiff,              05-CV-1945 (TCP)

          -against-
                                             MEMORANDUM
                                             AND ORDER
NORTHROP GRUMMAN SYSTEMS
CORPORATION (f/k/a Northrop Grumman
Corporation), THE UNITED STATES NAVY
and THE UNITED STATES OF AMERICA,

                    Defendants.
-----------------------------------------------------------X
```

PLATT, District Judge.

Before the Court is Town of Oyster Bay's ("plaintiff" or "Town") motion for reconsideration of this Court's Order dated May 14, 2009. Also before the Court is the United States Navy's and United States of America's ("federal defendants") motion for partial reconsideration of said Order. For the following reasons, plaintiff's motion is hereby **DENIED** and federal defendants' motion is hereby **GRANTED**.

The parties' familiarity with the facts of this case is presumed and facts will be repeated only to the extent necessary to decide the instant motions.

## DISCUSSION

I.   **Plaintiff's Motion for Reconsideration**

   A.   **Legal Standard**

In the Eastern District of New York, motions for reconsideration are governed by Local Rule 6.3, which requires that the motion "set[] forth concisely

the matters or controlling decisions which counsel believes the court has overlooked." Motions for reconsideration brought pursuant to Local Rule 6.3 are decided by the same standards as motions brought pursuant to Federal Rule of Civil Procedure 59(e). *Orlik v. Dutchess County*, No. 08-CV-1213, 2010 WL 1379776, at *2 (S.D.N.Y. Mar. 25, 2010). *See Word v. Croce*, No. 00-CV-6496, 2001 WL 755394, at *2 (S.D.N.Y. July 5, 2001) ("The standards governing a motion to alter or amend judgment pursuant to Rule 59(e) and motions for reconsideration or reargument pursuant to Local Rule 6.3 are the same.").

"The threshold for prevailing on a motion for reconsideration is high." *Nakshin v. Holder*, No. 19-CV-1676, 2010 WL 92776, at *1 (2d Cir. Jan. 12, 2010). Accordingly, reconsideration of a " 'previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.' " *In re Health Management Systems, Inc.*, 113 F. Supp.2d 613, 614 (S.D.N.Y. 2000) (quoting *Wendy's Int'l, Inc. v. Nu-Cape Construction, Inc.*, 169 F.R.D. 680, 685 (M.D. Fla. 1996)). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citing *Schonberger v. Serchuk,* 742 F. Supp. 108, 119 (S.D.N.Y. 1990); *Adams v. United States*, 686 F. Supp. 417, 418 (S.D.N.Y. 1988)).

Furthermore, a motion for reconsideration is not a vehicle to reargue "those issues already considered when a party does not like the way the original motion was resolved." *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996). Nor is it a time for a party to introduce facts, issues and arguments not previously presented to a court. *Orlik*, 2010 WL 1379776, at *2. *See In re Worldcom, Inc. Securities Litigation*, 308 F. Supp.2d 214, 224 (S.D.N.Y. 2004) ("A motion for reconsideration should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion and that would have changed its decision."). Reconsideration, therefore, "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

### B.     Plaintiff's CERCLA Claim

By Memorandum and Order dated May 14, 2009, this Court granted defendants' motions for summary judgment on plaintiff's Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") claim.

Plaintiff argues that the Court's finding that the Town's choice of remedial plan was inconsistent with the National Contingency Plan ("NCP") should not serve as a basis to deny recovery of all of its response costs. In support, plaintiff cites 42 U.S.C.§ 9607(a)(4)(B), which makes persons who accept hazardous substances for transport or treatment liable where there is a threatened or actual release which causes necessary response costs to be incurred. The Second Circuit

Court of Appeals has held that this section of the CERCLA statute allows for recovery of " '*necessary* costs of response . . . consistent with the national contingency plan.' " *W.R. Grace & Co. v. Zotos International, Inc*., 559 F.3d 85, 95 (2d Cir. 2009) (quoting 42 U.S.C. § 9607(a)(4)(B)). Plaintiff contends that although the Court's May 14 Order concluded that remedial alternative 4 was not cost-effective, it does not follow that plaintiff is foreclosed from recouping some of its necessary response costs as long as they are consistent with the NCP. Mem. in Supp. p. 6.

      Plaintiff, however, did not raise this claim, or anything similar to it, in its summary judgment motion or in opposition to Grumman's and the federal defendants' summary judgment motions. "[A] motion for reconsideration is not designed to give a party the opportunity to 'advance new facts, issues, or arguments not previously presented to the Court.' " *U.S. Gas & Electric, Inc. v. Big Apple Energy, LLC*, No. 09-CV-1961, 2010 WL 1438820, at *3 (E.D.N.Y. Apr. 10, 2010) (citing *National Union Fire Ins. Co. v. Stroh Companies, Inc*., 265 F.3d 97, 115 (2d Cir. 2001)). Nor may a party " 'treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings.' " *Cantone & Co., Inc. v. Seafrigo,* No. 07-CV-6602, 2010 WL 1488014, at *3 (S.D.N.Y. Apr. 12, 2010) (quoting *Seinfeld v. WorldCom, Inc*., No. 06-CV-13274, 2007 WL 1573870, at *1 (S.D.N.Y. May 31, 2007)). Instead, plaintiff, under the guise of a reconsideration motion, requests for the first time that the Court modify

its Order and find that the Town's actions and costs in implementing the work "associated with Remedial Alternative 2 were consistent with the NCP." Meanwhile, at the time the May 14 Order was decided, the Court had before it four (4) motions for summary judgment, none of which requested or briefed the concept of awarding plaintiff costs associated with remedial alternative 2. The Court declines to do so now.

      C.      **Reconsideration of Plaintiff's Costs**

Plaintiff also moves to have the affidavit of Matthew Russo, submitted for its summary and calculation of costs incurred by the Town in investigating and remediating the Park, reconsidered. Russo's summary affidavit was rejected and the Court held that plaintiff failed to submit admissible evidence of its costs.

As defendants note, plaintiff's motion for reconsideration of this issue merely rehashes the same arguments put forth in its original motion for summary judgment. *See Stoner v. New York Ballet Co.*, No. 99-CV-0196, 2002 WL 523270, at *8 (S.D.N.Y. Apr. 8, 2002) ( denying motion for reconsideration where plaintiff basically repeated arguments made in prior submissions). This fact alone is reason to deny plaintiff's motion outright.

The Court takes exception, however, with plaintiff's use of *United States v. E.I. du Pont de Nemours & Co.*, 341 F. Supp.2d 215 (W.D.N.Y. 2004) in support of its position on reconsideration. In that case, also brought pursuant to CERCLA, plaintiff submitted documentary evidence, including time records and travel vouchers as well as the testimony of a certified public accountant who was

an expert in cost accounting and who testified about the methods of calculating plaintiff's direct and indirect costs, all in addition to a declaration summarizing the work and when it was completed. *Id.* at 245. *See United States v. Chapman*, 146 F.3d 1166, 1171-72 (9th Cir. 1998) (affirming the district court's finding that plaintiff adequately documented its costs by keeping extensive records of its response action and recovery costs in the form of contracts, time sheets, payroll documents, cost estimates, accountant and attorney declarations); *United States v. Findett Corp.*, 220 F.3d 842, 849 (8th Cir. 2000) (affirming district court's denial of defendant's summary judgment motion on plaintiff's cost documentation and noting that plaintiff "submitted thoroughly detailed cost summaries, supporting data, and other competent evidence to support its claim for recovery of response costs").

In this case, plaintiff expected the Court to award it upward of $22 million dollars based on a bare bones declaration from its chief project engineer which merely categorized monies allegedly expended by plaintiff. Plaintiff's arguments in support of this scanty evidence in its original Reply Brief were unavailing and it remains of no consequence to the Court that underlying documents are or were available to the adverse party, particularly since the Court is the one charged with making the decision. Furthermore, the Court's May 14 Order did not find that plaintiff's submission of Russo's affidavit was inadmissable. The problem was, and still is, plaintiff's failure to submit actual documentation of its expenditures and a proper cost accounting. Plaintiff's motion for reconsideration of this issue

is therefore denied.

### D.     Reconsideration on Exercise of Supplemental Jurisdiction

Plaintiff requests that the Court reconsider its decision not to exercise jurisdiction over its State law claims against Northrop Grumman Systems Corporation ("NGSC") based on the existence of the Court's continuing original jurisdiction by virtue of NGSC's and the federal defendants' CERCLA-based counterclaims as well as the Court's original jurisdiction over plaintiff's tort claims against the federal defendants.[1]  In its May 14 Order, the Court declined to exercise supplemental jurisdiction over plaintiff's State law claims against NGSC pursuant to 28 U.S.C. § 1367(c)(3).

Upon review of plaintiff's request, the Court continues to decline to exercise jurisdiction over plaintiff's State law claims against NGSC[2] because given the procedural posture of this case, including the fact that all of plaintiff's federal claims have been dismissed and that the tort claims against federal defendants shall be dismissed herein, the Court finds that plaintiff's State law claims "substantially predominate[] over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2).

Plaintiff's state claims for negligence, ultrahazardous and/or abnormally

---

1. Despite having all filed summary judgment motions, none of the parties moved for summary judgment as to defendants' counterclaims.

2. Plaintiff's tort claims against the federal defendants, which are dismissed with prejudice, are discussed *infra*.

dangerous activities, unjust enrichment and contribution differ in proof and scope in comparison to defendants' CERCLA claims and adjudication would require significant judicial resources. This is particularly so given that defendants were granted judgment on plaintiff's CERCLA claims. *See Gliatta v. Stein*, No. 03-CV-0214, 2004 WL 1171714, at *3 (W.D.N.Y. May 23, 2004) ("In determining whether state law claims substantially predominate over the federal claim over which the court has original jurisdiction, courts consider 'whether the state law claims are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims.' ") (quoting *Diven v. Amalgamated Transit Union Int'l & Local 689*, 38 F.3d 598, 601 (D.C. Cir. 1994)). Accordingly, plaintiff's State law claims against NGSC remain dismissed without prejudice to renew. *See Pavone v. Puglisi*, 353 Fed. App'x 622, 626 (2d Cir. 2009) (noting that when a court declines to exercise supplemental jurisdiction, State claims should be dismissed without prejudice) (citing *Chanayil v. Gulati*, 169 F.3d 168, 171-72 (2d Cir. 1999)).

### E. Plaintiff's Request for Entry of Judgment or Certification

Plaintiff requests that the Court exercise its discretion and certify its May 14 Order as a final judgment on the Town's CERCLA claims pursuant to Federal Rule of Civil Procedure 54(b). In the alternative, plaintiff requests that the Court certify for appeal the question of whether a New York State Department of Environmental Conservation's ("DEC") approval of the Town's cleanup plan via an Administrative Consent Order satisfies CERCLA's requirement that response

costs be consistent with the NCP.

### 1. Final Judgments

Federal Rule of Civil Procedure 54(b) provides that when an "action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." "A partial judgment should not be entered without careful consideration of the strong federal policy against piecemeal appeals." *Wilner v. National Sec. Agency*, No. 07-CV-3883, 2008 WL 2949325, at *1 (S.D.N.Y. July 31, 2008). A Rule 54(b) certification " 'should be used only in the infrequent harsh case where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal.' " *Id.* (quoting *Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005)). A court's power to grant a final judgment as to a claim while other claims are outstanding must be exercised sparingly. *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 41 (2d Cir. 2003).

Plaintiff claims that if the Court does not certify its order as a final judgment, it may be years until NGSC's counterclaim is disposed of while plaintiff has spent in excess of $22 million remediating the Park. As defendant NGSC notes, however, this case was declared trial ready on December 17, 2008 and a brief bench trial will dispose of defendants' counterclaims. Once the instant

Order is docketed, plaintiff's and federal defendants' pending motions for reconsideration will have been decided and all that need be done is to set the trial date. The Court finds, therefore, that this is not the "infrequent harsh case" that demands an immediate appeal. Accordingly, plaintiff's request for entry of final judgment as to its CERCLA claims is hereby denied.

### 2.   *Interlocutory Decisions*

Title 28 U.S.C. § 1292(b) provides in pertinent part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. . . .

Plaintiff argues that it relied upon *Pfohl Brothers Landfill Site Steering Committee v. Browning-Ferris Industries of New York, Inc.*, No. 95-CV-956, 2004 WL 941816, at *23 (W.D.N.Y. January 30, 2004) for the proposition that response costs are consistent with the NCP, as a matter of law, when incurred in accordance with a plan approved and monitored by the DEC. Given that this Court concluded that plaintiff's plan was inconsistent with the NCP despite the Consent Order, plaintiff argues that this issue is unsettled and that substantial grounds for differences of opinion exist.

This Court distinguished *Pfohl Brothers* from the instant case on the ground that the DEC approved the remediation costs in that case. In this case,

there was undisputed evidence that the DEC was satisfied with Remedial Plan 2, but that plaintiff instituted Remedial Plan 4 on its own. Thus, this case is factually different from *Pfohl Brothers*. Had the DEC given its unfettered approval to plaintiff's selection, as was the case in *Pfohl Brothers*, this case may have turned out differently. Given the foregoing, plaintiff's request to certify the question of whether compliance with an approved DEC Consent Order is consistent with the NCP as a matter of law is hereby denied.

For all of the foregoing reasons, plaintiff's motion for reconsideration of the May 14 Order is hereby denied.

## II.     Federal Defendants' Motion for Partial Reconsideration

Defendants United States of America and United States Navy move for partial reconsideration of the Court's May 14 Order on the basis that the Court declined to exercise supplemental jurisdiction over plaintiff's State law claims against NGSC, but did not pass on plaintiff's tort claims against the federal defendants over which the Court has exclusive jurisdiction.[3] For the following reasons, federal defendants' motion for partial reconsideration is hereby granted.

### A.     Federal Tort Claims Act

Pursuant to 28 U.S.C. § 1346(b)(1), "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for

---

3. Plaintiff concedes that there has been no waiver of sovereign immunity as to the Town's claims against the United States Navy and agrees to discontinue those claims. The Town also agreed to discontinue its strict liability and unjust enrichment claims against the United States. Plt. Mem. in Opp. at p. 21 n.1 (DE # 68). Accordingly, those claims are hereby dismissed with prejudice.

money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  "The Federal Tort Claims Act ["FTCA"] is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976).

It is "axiomatic" under the principle of sovereign immunity " 'that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.' " *Adeleke v. United States*, 355 F.3d 144, 149 (2d Cir. 2004) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)).  A court may, however, exercise jurisdiction over the federal government if, as and when certain conditions are satisfied whereby the government waives its immunity from suit.  *Id.* at 153.

Title 28 U.S.C. § 2401(b) provides that a "tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."

### B.    Plaintiff's Tort Claims Against the United States

Plaintiff remaining tort claims against the United States are for

contribution[4] pursuant to New York's Civil Practice Law and Rules § 1401 and negligence based on public nuisance. Federal defendants argue that these claims must be dismissed because plaintiff failed to file an administrative law claim within the two-year statutory period set forth in 28 U.S.C. § 2401(b) and, therefore, the United States has not waived its sovereign immunity.

### 1.     *Claim Accrual Under the FTCA*

The date on which an FTCA claim accrues is determined as a matter of federal law. *Syms v. Olin Corp.*, 408 F.3d 95, 107 (2d Cir. 2005) (citing *Kossick v. United States*, 330 F.2d 933, 935 (2d Cir. 1964); *Quinton v. United States,* 304 F.2d 234, 235 (5th Cir. 1962)). "Any limitations imposed by the waiver statute, whether they be substantive, procedural, or temporal, are to be strictly applied against the claimant." *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 719 (2d Cir. 1998) (citing cases).

For the purposes of the FTCA, a claim accrues when a plaintiff becomes aware of an injury whether or not he or she realizes the injury resulted from negligence. *United States v. Kubrick*, 444 U.S. 111, 123 (1979). *See Syms*, 408 F.3d at 107 (2d Cir. 2005) ("Depending on the circumstances, claims accrue either at the time of injury or when the plaintiff discovered, or in the exercise of

---

4. Plaintiff's reliance on *United States v. Yellow Cab Comp.*, 340 U.S. 543 (1951) in support of its contribution claim is misplaced because that case held that the United States could be impleaded as a third-party defendant and sued for contribution under the FTCA. It is undisputed that the United States may be sued for contribution in the proper case. The holding of *Yellow Cab*, however, does not effect a blanket waiver of sovereign immunity, nor does it excuse a plaintiff's failure to serve a timely administrative law claim.

reasonable diligence should have discovered, the facts giving rise to the cause of action."); *Knudsen v. United States*, 254 F.3d 747, 751 (8th Cir. 2001) (holding that FTCA claims accrue "when the injured person knows or reasonably should know both the existence and cause of his injury" even if "the injured person does not know that the injury is legally redressable") (internal citations omitted); *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998) ("Ordinarily, a plaintiff's FTCA claim accrues at the time of injury."); *Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1080 (2d Cir. 1988) ("An FTCA action accrues when the plaintiff in the exercise of reasonable diligence knows both the existence and the cause of his injury.").

### 2.   *Plaintiff's FTCA Claims*

On February 18, 1963, plaintiff's consulting engineering firm H2M submitted an "Engineering Report on the Proposed Bethpage Community Park" which stated that the northerly and eastern portions of the site consisted of "undisturbed virgin ground and that the remaining approximately eight (8) acres had been "until recently, utilized as a borrow pit disposal area." By letter dated March 27, 1995, the Department of the Navy advised the New York State Department of Health of the Navy's Final Report with respect to the results of its "Offsite Soil Sampling and PCB Analysis Report." Dec. Kambic, Exh. A (DE # 64). The report was the result of the Navy's recent completion of offsite soil testing to determine whether "contamination from the Navy's Site 1 ha[d] migrated off site." The correspondence indicates that a copy of this report was

-14-

sent to the Town's attorney. According to the report, the testing consisted of a "total of 17 surface soil samples (including duplicates)" which were collected "from 15 locations in and near the residential neighborhood" including "one area at the Bethpage Community Park." The park sample was collected as a background sample and contained .169 mg/kg of PCBs. The standard for residential property use is 1 mg/kg.

    The following facts are undisputed:

        – On April 25, 2002, plaintiff provided a copy of the results of a soil sampling program conducted March 4 through March 8, 2002, prepared by NGSC's consulting engineers, to Town Councilwoman Bonnie Eisler.

        – On April 30, 2002, Town officials were advised that elevated levels of polychlorinated biphenyls ("PCBs") and metals were found at Bethpage Community Park.

        – On May 2, 2002, the Town closed Bethpage Community Park because of elevated levels of contaminants, including PCBs.

        – By letter dated May 9, 2002, a copy of which was sent to the Town, NGSC advised the New York DEC that there were two other parties who were directly involved in the contamination of the park including the United States Navy as the owner of adjacent property from which contaminants may have originated and the Town as the developer of the park who may have brought in contaminants from other sources.

        – On or about May 13, 2002, Edward P. Mangano, Nassau County

Legislator, wrote to Town Supervisor John Venditto to suggest that the Town contact the Navy, NGSC, the DEC and the Bethpage Water District as resources for historical data concerning Bethpage Community Park.

– On May 13, 2002, the Town received a facsimile of an electronic mail message from NGSC with regard to additional Park sampling which needed to "be worked out with the agencies and agreed to by all the involved parties, which include the Town and the Navy."

Viewed in concert with the Navy's March 1995 report and its concern that contaminants may have migrated from its property, plaintiff's claims against the United States and the Navy accrued, at the latest, on May 2, 2002 when the Town closed the park due to elevated levels of contaminants, including PCBs. Pursuant to 28 U.S.C. § 2401(b), the Town had until May 2, 2004 to file an administrative claim. It is undisputed, however, that federal defendants received plaintiff's notice of claim on May 26, 2004. Fed. Def. 56.1 Stmt. 86; Plt. 56.1 Ctr. Stmt. 86. Plaintiff's claims against the United States, therefore, must be dismissed with prejudice because the Court lacks subject matter jurisdiction over them. *See Garland-Sash v. Lewis*, 348 Fed. App'x 639, 642-43 (2d Cir. 2009) (citing cases from other circuits and holding that compliance with FTCA statute of limitations is jurisdictional); *Santiago v. United States*, No. 02-CV-4896, 2004 WL 758196, at *1 (E.D.N.Y. Jan. 28, 2004) ("If a plaintiff fails to comply with the FTCA's

requirements, the court lacks subject matter jurisdiction.").

## CONCLUSION

For the reasons stated herein, plaintiff's motion for reconsideration is hereby **DENIED** and federal defendants' motion for reconsideration is hereby **GRANTED**. Plaintiff's tort claims against the United States for negligence and contribution are hereby dismissed with prejudice.

**SO ORDERED**.

Dated: May 21, 2010
       Central Islip, New York

/s/
Thomas C. Platt, U.S.D.J.