UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TOWN OF OYSTER BAY,

                          Plaintiff,          Civil Action No.:
                                              05-CV-1945 (TCP) (AKT)

           -against-

                                              **Hon. Thomas C. Platt**

NORTHROP GRUMMAN SYTEMS
CORPORATION (*f/k/a* Northrop Grumman
Corporation), THE UNITED STATES NAVY and
THE UNITED STATES OF AMERICA,

                          Defendants.

------------------------------------------------------------X



**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR RECONSIDERATION PURSUANT TO FRCP 54(b)**

# SUMMARY OF ARGUMENT

Plaintiff Town of Oyster Bay (the "Town") requests that this Court reconsider and vacate that portion of its May 14, 2009 Memorandum and Order (Docket No. 94) (the "May 14th Order") which dismissed the Town's cost recovery claim under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA") pursuant to Federal Rule of Civil Procedure 54(b).

The Town entered into an Administrative Consent Decree with the New York State Department of Environmental Conservation ("DEC"). The Administrative Consent Order provided that the Town develop a work plan for the clean up of a 7 acre portion of the Bethpage Community Park (the "Park"). The Town submitted to the DEC a remedial plan (Remedial Alternative 4) for the clean up. The DEC approved Remedial Alternative 4, and, in accordance with the Administrative Consent Decree, the Town spent in excess of $22 million to clean up that 7 acre area.

In its motion for summary judgment, the Town argued that the Town's adherence to the Administrative Consent Decree with the DEC established, as a matter of law, one requirement for recovery under CERCLA: that the costs for which recovery is sought are consistent with the National Contingency Plan ("NCP"). But the Court rejected the Town's argument and concluded that "it cannot be said that the DEC wholeheartedly endorsed [the Town's] selection of Remedial Alternative 4." The Court granted summary judgment dismissing the Town's cost recovery claim based on the Court's conclusion that the Town did not substantially comply with the NCP requirements.

1

In February 2010, some nine months after the Court issued its May 14th Order, the Second Circuit held that the Town's argument was correct. In *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.* 596 F.3d 112 (2d Cir. 2010), the Second Circuit held that adherence to a DEC Consent Decree, that is, conducting a response plan "under the monitoring, and with the *ultimate approval,* of the state's environmental agency" establishes, as a matter of law, compliance with the NCP.

The Court's May 14th Order drew upon various comments made by the DEC to the Town that resulted in the Court's conclusion that the DEC's approval of Remedial Alternative 4 was not a "wholehearted endorsement." But as the *Niagara Mohawk* decision now makes clear, a "wholehearted endorsement" is not required. Rather, *Niagara Mohawk* poses a straightforward question: was the response plan conducted under the monitoring and with the "ultimate approval" of the DEC? The DEC's degree of enthusiasm in giving its approval to the clean up plan is simply not a factor. *Niagara Mohawk* holds that the "ultimate approval" by the state's environmental agency establishes compliance with the NCP.

In the matter at hand, despite the DEC's comments that it would have approved a remedial alternative cheaper than Remedial Alternative 4, the DEC did ultimately approve the Town's implementation of Remedial Alternative 4:

> Accordingly the NYSDEC *will approve the remedial alternative [Remedial Alternative 4],* as it is protective of public health and the environment.

2

May 14th Order at p. 9. And it is undisputed that the Town implemented Remedial Alternative 4 under the monitoring of the DEC. As a result, *Niagara Mohawk* compels the conclusion that the Town has established compliance with the NCP.

The Court did not have the benefit of the *Niagara Mohawk* decision at the time that it issued its May 14th Order. The Court has the authority under Rule 54(b) of the Federal Rules of Civil Procedure to reconsider a prior decision at any time before final judgment.

Reconsideration is warranted here because there is an intervening change of controlling law between the time of the decision and a final judgment yet to be issued by this Court. The Second Circuit's decision in *Niagara Mohawk* is that intervening change: it is now the law in this Circuit that a cost recovery plaintiff establishes compliance with the NCP by conducting a response under the monitoring and with the ultimate approval of the state's environmental agency.

The Town requests that the Court reconsider its May 14th Order, and upon reconsideration, grant the Town the relief as more full set forth in its Notice of Motion.

## ARGUMENT

### A. Under The Second Circuit's *Niagara Mohawk* Decision, The Town's Adherence To The Administrative Consent Order Establishes Compliance With The NCP

In the motions for summary judgment that were the subject of the Court's May 14th Order, the Town argued that it established consistency with the NCP, as a matter of law, because the Town conducted the clean up of the Construction Area pursuant to a DEC-approved Consent Order and under the monitoring of the DEC. May 14th Order at

3

p. 28 ("[t]he Town claims that it is well established that where a state environmental agency approves the development of a response action and monitors its implementation, the NCP consistency requirement is satisfied as a matter of law.")

The Court rejected the Town's argument. May 14th Order at p. 54. The Court concluded that:

> it cannot be said that the DEC wholeheartedly endorsed [the Town's] selection of Remedial Alternative 4. Accordingly, the DEC's involvement in this case does not demonstrate that [the Town's] actions were consistent with the NCP as a matter of law.

*Id.*

Some nine months after the Court issued its May 14th Order, the Second Circuit decided *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112 (2d Cir. 2010). In *Niagara Mohawk*, plaintiff entered into an Order on Consent with the New York State DEC and, pursuant to such Order, incurred costs to investigate and remediate certain hazardous waste sites. Plaintiff then brought a cost recovery action under CERCLA. The District Court found that there was a genuine issue of material fact as to whether Niagara Mohawk's clean up costs were consistent with the NCP. *Id.* at 136; *see Niagara Mohawk Power Corp. v. Consolidated Rail Corp.*, 291 F. Supp. 2d 105, 128 (N.D.N.Y. 2003).

On appeal, the Second Circuit observed that it had "never squarely addressed whether compliance with a state consent decree is sufficient to prove adherence to the National Contingency Plan". 596 F.3d at 136. The court noted that where remedial

4

actions are undertaken by the federal or state government, there is a presumption that such actions are consistent with the NCP. *Id.* at 137.

But private parties seeking cost recovery must establish compliance with the NCP. *Id.* The *Niagara Mohawk* Court then concluded:

> [o]ne way of establishing compliance with the national plan is to conduct a response under the monitoring, and with the ultimate approval, of the state's environmental agency.

*Id.* at 137, *citing NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 791 (7th Cir. 2000).

This conclusion followed the detailed analysis undertaken by the *Niagara Mohawk* Court of a private party's right to seek contribution under CERCLA § 113(f)(3)(B) (42 U.S.C. § 9613(f)(3)(B)) and a state's role in affording that right. A contribution claim is granted to a person who has resolved its liability "to the United States *or a State* for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement . . . ." 42 U.S.C. § 9613(f)(3)(B) (emphasis added). Thus a state, when it settles CERCLA claims, provides the same gateway to a contribution claim as does a settlement with the federal government. *See* 596 F.3d at 126 ("[i]f Congress wanted to constrict the authority of state environmental agencies in settling CERCLA claims, it could have easily done so. Instead, Congress chose the disjunctive and established a dual track for the resolution of CERCLA liability."); *id.* at 127 ("CERCLA views the states as independent entities that do not require the EPA's express authorization before they can act. New York is empowered to settle a PRP's CERCLA liability.").

*Niagara Mohawk* underscored the role that states play in effectuating the purposes of CERCLA; "[t]hat role is not only critical, it is autonomous." *Id.* at 126. Thus, the court's conclusion - - that approval of a remedial plan by a state environmental agency establishes compliance with the NCP - - is consistent with a state's power to settle a private party's CERCLA liability without the express approval of the EPA. *Id.* at 137. And where the state settles a CERCLA claim with the PRP, it would be fundamentally inconsistent with that power if adherence to that settlement precluded a contribution claim:

> [i]t would be bizarre indeed if a PRP's settlement with a state entitled it to seek contribution under § 113(f)(B)(3), but its actions taken in executing that settlement disqualified the settlor from employing the statute to recoup a portion of its expenses.

*Id.* at 137.

Thus, the court concluded that plaintiff's adherence to the DEC Consent Decree "established its compliance with the National Contingency Plan." *Id.* On remand from the Second Circuit, the District Court entered the appropriate Order as mandated by the Second Circuit's decision:

> Niagara Mohawk has established its compliance with the National Contingency Plan *by virtue of its adherence to the DEC Consent Decree.*

Declaration of Janice McGuckin-Greenberg, Exhibit "A" at p. 4, ¶ 6 (emphasis added).

In its May 14th Order, the Court recited the DEC's statement in its May 4, 2006 letter to the Town that:

> the NYSDEC will approve the remedial alternative [Remedial
> Alternative 4 proposed by the Town], as it is protective of
> public health and the environment.

May 14th Order at p. 9. The Court, however, citing DEC comments such as "[t]he level of remedial effort for Alternative 4 is beyond what the NYSDEC would require. . . ." (May 14th Order at p. 8), and "NYDEC would not have selected Remedial Alternative 4 if it were running the remediation" (May 14th Order at p. 56), concluded that the DEC's endorsement of Remedial Alternative 4 was less than "wholehearted":

> it cannot be said that the DEC wholeheartedly endorsed [the
> Town's] selection of Remedial Alternative 4.

May 14th Order at p. 54.

But as *Niagara Mohawk* establishes, it is a short list: either the Town conducted Remedial Alternative 4 with the "ultimate approval" of the DEC, 596 F.3d at 137, or it did not. The DEC's degree of enthusiasm (or lack thereof) in giving its approval to the Town is simply not relevant.

The May 14th Order notes that "[the Town] contends that the DEC approved the remedial alternative selected by the Town [Remedial Alternative 4] with which defendants disagree given the DEC's [May 4, 2006] letter . . . ." May 14th Order at p. 8.

Defendants' "disagreement" aside, the plain import of the DEC's statement in the May 4, 2006 letter, that the DEC "will approve [Remedial Alternative 4]", is that the DEC gave "ultimate approval" to the Town to implement Remedial Alternative 4. And there is no dispute that the DEC, virtually on a daily basis, monitored the progress of the Town's clean up.

7

The Town's implementation of Remedial Alternative 4 fits squarely within the *Niagara Mohawk* ruling. The Town "conduct[ed] a response under the monitoring, and with the ultimate approval, of the state's environmental agency." *Niagara Mohawk, supra*, 596 F.3d at 137. *Niagara Mohawk* represents an intervening change of controlling law after this Court issued its May 14th Order. The Court did not have the benefit of the reasoning and the ruling of *Niagara Mohawk*, and should reconsider its May 14th Order in light of that now existing precedent.

## B. Reconsideration Should Be Granted

District Courts have the authority under Rule 54(b) of the Federal Rules of Civil Procedure to reconsider a prior decision at any time before final judgment. *United States v. Incorporated Village of Island Park*, 2008 U.S. Dist. LEXIS 88677, *7 (E.D.N.Y. Nov. 3, 2008); *Dictograph Products Co. v. Sonotone Corp.*, 230 F.2d 131, 134-36 (2d Cir. 1956). The principal grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence or the need to correct a clear error or prevent manifest injustice. *Virgin Atlantic Airways, Ltd. v. National Mediation Board*, 956 F. 2d 1245, 1255 (2d Cir. 1992), *cert denied,* 506 U.S. 802, 113 S.Ct. 67 (1992).

Although Local Rule 6.3 provides a 10 day period within which to file a motion for reconsideration, the court retains discretion to consider motions made after that period has expired when justice so requires. *Church of Scientology International v. Time Warner, Inc.*, 1997 U.S. Dist. LEXIS 12839, *13-14 (S.D.N.Y. Aug. 27, 1997), *aff'd sub. nom. Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001), *cert denied*, 534 U.S. 814, 122 S.Ct. 40. Justice so requires the exercise of this discretion when there is an

intervening change in controlling law. *Richman v. W.L. Gore & Associates*, 988 F. Supp. 753, 755 (S.D.N.Y. 1997); *Clinton v. Brown & Williamson Holdings, Inc.*, 652 F. Supp. 2d 528, 530 (S.D.N.Y. 2009); *Filler v. Hanvit Bank*, 2003 U.S. Dist. LEXIS 12836, *2 (S.D.N.Y. July 23, 2003), *aff'd*, 378 F.3d 213 (2d Cir. 2004).

The May 14th Order dismissed the Town's CERCLA claims because the Court concluded that ". . . the Town did not substantially comply with the NCP requirements." May 14th Order at p. 60. But the Second Circuit's opinion in *Niagara Mohawk*, issued nine months after the May 14th Order, changed the controlling law upon which this Court relied. Accordingly, justice requires that this Court exercise its discretion and reconsider its May 14th Order.

## CONCLUSION

In addition to establishing that the Town's adherence to the Administrative Consent Order proves compliance with the NCP, the *Niagara Mohawk* Court underscored the following point: when evaluating a motion for summary judgment to dismiss a CERCLA cost recovery claim, "caution is appropriate. . . ." 596 F.3d at 131. In keeping with the Second Circuit's "previous directive to liberally construe CERCLA in order to accomplish the congressional objectives", *id.* at 132, *Niagara Mohawk* held that:

9

> [s]ummary judgment *is only proper* when a defendant establishes it is not liable at all under CERCLA - - namely, it is not a PRP under the statute, there is no plausible evidence that it discharged hazardous materials, or it is eligible for one of the three affirmative defenses available under § 107.

*Id.* (Emphasis added.)

This Court did not reach those questions in dismissing the Town's CERCLA claims. Accordingly, the Town requests that, upon reconsideration, the Court conclude that the Town has established adherence to the NCP, and then address the issues of the defendants' liability under CERCLA.

Dated: Uniondale, New York
October 14, 2010

Respectfully submitted,

RIVKIN RADLER LLP
Attorneys for the Town of Oyster Bay

By: _____
William M. Savino
Stephen J. Smirti, Jr.
Janice McGuckin-Greenberg
John W. Egan
926 RXR Plaza
Uniondale, New York 11556-0926

2388992 v6