

**ArentFox Schiff LLP**

233 South Wacker Drive
Suite 7100
Chicago, IL  60606

312.258.5500  **MAIN**
312.258.5600  **FAX**

afslaw.com

March 14, 2025

**VIA ECF**

**Russell B. Selman**
Partner

312.258.5527  **DIRECT**

russell.selman@afslaw.com

U.S. Magistrate Judge Steven I. Locke
Eastern District of New York
100 Federal Plaza
Courtroom 820
Central Islip, NY 11722

Re:   Town of Oyster Bay v. Northrop Grumman Systems Corporation (2:05-cv-1945)

Dear Judge Locke:

The Town of Oyster Bay (the Town) and Northrop Grumman (Grumman) have been working to complete discovery in advance of the Court's April 11, 2025, deadline for completion of depositions. Following written correspondence and oral discussion, the parties are at an impasse on the scope of discovery in light of the parties' stipulation regarding Grumman's counterclaims (ECF No. 190). This discovery scope dispute impedes several aspects of the Town's discovery, including the production of documents, interrogatory answers, and deposition topics.

On December 27, 2024, the Town wrote to Grumman to address deficiencies in Grumman's production of documents and interrogatory answers.[1] The Town stated that Grumman's refusal to answer interrogatories and produce documents regarding its Bethpage manufacturing operations improperly narrows the scope of discovery, foreclosing the Town's ability to develop facts to support its equitable defenses to Grumman's counterclaim. (*See* Exh. A.) The Town stated that these records are relevant because they would show the volumes and types of chemicals that Grumman disposed at its former property that is now the Bethpage Community Park (the Park).

On February 20, 2025, the parties met and conferred on this and other issues. The Town explained its position that records of Grumman's chemical purchases are needed to equitably allocate the costs of the groundwater and soil vapor treatment systems which Grumman designed, constructed, and operated to remediate its own contamination and for which Grumman seeks contribution. Grumman responded that, in its view, cost allocation in this case is quantitatively divisible by the amount of each contaminant collected by its treatment systems.

---

[1] The Town's letter is attached as Exhibit A. Grumman's February 11, 2025, responsive letter is Exhibit B. The Town's Interrogatories and First, Second, and Third Requests for Production are Exhibits C, D, E, and F, respectively. Grumman's responses to each request are Exhibits G, H, I, and J, respectively.



Therefore, Grumman said, only documents concerning Freon 12 and Freon 22—the chemicals which Grumman alleges came from the Town's ice rink—are relevant.

The Town seeks the Court's help to resolve these matters. Specifically, the Town moves to compel Grumman to produce documents responsive to its Requests for Production Nos. 2, 5, 6, 14, 15, 17, 18, 26, 27, 33, 34, 35, 36, 37, and 38 to answer Interrogatories Nos. 2, 4, 6, 7, 9, and 10.[2] The Town is entitled to the information it seeks for two reasons.

***First***, the Town is entitled to develop facts supporting its equitable defenses to contribution. *See* Fed. R. Civ. P. 26(b)(1) (the scope of discovery includes any nonprivileged information relevant to any party's claim or defense). Courts decide CERCLA cost allocation by selecting relevant equitable factors and their appropriate weight in each case. *MPM Silicones, LLC v. Union Carbide Corp.*, 966 F.3d 200, 236 (2d Cir. 2020). For decades, courts have applied two sets of factors: the Gore Factors and the Torres Factors. *See id.* n.53; *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 130 (2d Cir. 2010) (listing Gore Factors); *Yankee Gas Servs. Co. v. UGI Utilities*, Inc., 852 F. Supp. 2d 229, 247 (D. Conn. 2012) (collecting cases); *United States v. Davis*, 31 F. Supp. 2d 45, 63 (D.R.I. 1998) (enumerating Torres Factors). These two sets of Factors are particularly relevant at industrial sites and landfills, like here, where the cost allocation question is typically who dumped what chemicals and how much of them. *See*, *e.g.*, *Yankee Gas Servs.*, 852 F. Supp. 2d at 247-48 (applying both sets of Factors to former manufactured gas plant).

Grumman wrongly suggests that the Factors are irrelevant, because here liability is divisible by the amount of each chemical collected by its treatment systems. (Exh. B at 3.) Divisibility is a defense to a CERCLA § 107(a) action but does not displace equity in § 113(f) contribution actions, like this case. *Goodrich Corp. v. Town of Middlebury*, 311 F.3d 154, 170 n.16 (2d Cir. 2002). Per the Parties' stipulation, Grumman's counterclaims arise under § 113(f). (ECF No. 190 at 2.) Grumman may assert divisibility as an equitable factor in its favor, but divisibility does not foreclose the Town from seeking discovery to support its own equitable arguments.

The Town seeks information that speaks directly to the Gore and Torres Factors. The Park was Grumman's landfill; the Town seeks purchase records to establish how much of each chemical Grumman purchased, and therefore approximately how much of each it disposed at the Park. This relates to Torres Factor No. 1 (the extent to which costs are attributable to each party's waste), Gore Factor No. 2 (the amount of hazardous substances involved), and Gore Factor No. 3 (the degree of toxicity), because the Freon from the Town's rink is far less toxic than the

---

[2] In the interest of efficiency, the Town has narrowed its Requests No. 36 and 38 to two documents: Grumman's responses to its insurer's statements of fact regarding Grumman's manufacturing facility and the Park. Following a March 12, 2025, conference, Grumman still refuses to produce these documents.



U.S. Magistrate Judge Steven I. Locke
March 14, 2025
Page 3

chlorinated solvents Grumman disposed at the Park. *See Yankee Gas Servs.*, 852 F. Supp. 2d at 247. The Town's requests further relate to Grumman's degree of involvement in contaminating the site (Gore Factor No. 4), level of culpability (Torres Factor No. 2), and degree of benefit from contaminating the site (Torres Factor No. 3). *See id.* The Town also seeks information about Grumman's use of Freon.[3] The Town must be able to compare the quantity and nature of pollutants for which it and Grumman are responsible. *See Niagara Mohawk*, 596 F.3d at 133 (approving of comparative quantity of pollutants as an equitable factor).

By foreclosing the Town's discovery, Grumman claims the authority to decide which equitable defenses the Town's is entitled to pursue. Grumman's verdict: none of them. This is error. The Town is entitled to discovery it can use to persuade the Court to consider and give weight to the available Gore and Torres Factors.

*Second*, the proportion of waste deposited in the Park, not the proportion of waste removed from the Park, is the appropriate method for cost allocation in this case.

Grumman's purchase records are essential because Grumman's proposed quantitative division is unworkable. Based on conversations with the Town's experts and documents produced by Grumman, the Town believes that Grumman's systems have collected nearly all the contaminants for which the Town is responsible, but an unknown quantity of Grumman's contaminants remain in the soil. The Town's contaminants (Freon 12 and 22) and Grumman's contaminants (TCE, toluene, etc.) have different chemical properties, and therefore Grumman's system captures them at different rates. Allocating responsibility by the quantity of contaminants captured, as Grumman suggests, is nonsensical. The Town should not pay a disproportionate share because its contaminants were collected first.

The Town needs to know what Grumman disposed so it can estimate the share of the total contamination at the Park for which it should be responsible. The Town's requests for purchase records and records regarding Grumman's Freon use are proportional; they go directly to the quantitative baseline of the Town's cost allocation approach. Further, Grumman represented that it searched its records for Freon 12 and Freon 22, suggesting it can do so for other contaminants.

Sincerely,

*/s/ Russell B. Selman*
Russell B. Selman

---

[3] The Town is inquiring about Grumman's use of a different type of Freon, Freon-113, than the Freons for which Grumman alleges the Town is responsible, Freon 12 and Freon 22. Documents Grumman has produced show that Freon 113 is among the gases captured in Grumman's soil vapor treatment system at the Park.