# SIVE | PAGET | RIESEL

**KAYLEY MCGRATH**
DIRECT DIAL: 646.378.7200
KMCGRATH@SPRLAW.COM

March 18, 2025

**VIA ECF**
U.S. Magistrate Judge Steven I. Locke
United States District Court, Eastern District of New York
100 Federal Plaza, Courtroom 820
Central Islip, NY 11722

Re: *Town of Oyster Bay v. Northrop Grumman Systems Corporation*, Case No. 2:05-cv-1945

Dear Judge Locke:

We represent Defendant Northrop Grumman Systems Corporation ("NG") in the above-captioned matter (the "Litigation"). We write pursuant to Your Honor's Individual Rule 4.A.i in opposition to the letter motion (the "Motion") filed by the Town of Oyster Bay (the "Town"), ECF 194. The Town seeks to compel NG to search for, review, and produce hundreds of thousands of irrelevant records spanning decades at the tail end of this already extremely long-lived case.[1] This Litigation now only concerns how much the Town should contribute to the costs NG incurred to clean up freon that leaked from the Town's ice rinks in Bethpage Community Park (the "Park"). The Town, in trying to avoid contribution, is looking to expand the case to every purchase of hundreds of chemicals that NG used at its 500-acre facility in Bethpage (not the Park) for nearly fifty years. The Town makes this demand even though NG has already produced all documents showing (1) all of the chemicals that NG's system has remediated at the Park; and (2) all of NG's costs relating to that system.[2] Neither case law nor common sense supports the Town's demand, and the Court should deny the Town's Motion.

**I.      The Town's Motion Relates to a Facility and Substances Not at Issue in the Litigation.**

The Town's Motion requests information about the approximately 500-acre Bethpage Facility (the "Facility")—property distinct from the Park and not at issue in this Litigation—and requests records of "all" chemicals and metals that NG's predecessor purchased and used at the Facility. *See, e.g.*, ECF 194 Exhibits D and E, Requests for Production ("RFP") Nos. 2, 14, 15, 17, 18, 27; ECF 194 Exhibits C and G, Interrogatories 2, 4, 6, 7, 9 (referencing the "Facility" as separate from the "Park"). The Town never narrowed the time period of these requests, despite knowing that NG operated the Facility starting in the 1930s.

---

[1] NG estimates that there are 194 bankers boxes of hard copy documents, and hundreds of thousands of emails and electronic documents, potentially responsive to the Town's overbroad requests that would have to be reviewed.

[2] NG has already provided 122,665 pages of responsive documents in this final phase of the Litigation since discovery resumed last year, regarding freon and other volatile organic compounds ("VOCs") cleanup costs, from which the Town has already estimated the value of NG's claim. That discovery is in addition to what was produced in connection with the Town's now-dismissed claims, which already covered historical records of all disposal activities at the Park by the Navy and NG's predecessor, Grumman Corporation. The Town has not been able to explain in meet and confers why that prior discovery does not satisfy these requests. *See* Exhibit A hereto, NG Responses to Town's First Pre-2008 Interrogatories 8, 9, 10, 12 and Requests for Production Nos. 4, 5, 9, 10, 11.

The scope of the Town's requests defies common sense and goes far beyond the parties' previously negotiated Stipulation (ECF 190). In the Stipulation, the parties agreed that NG was only seeking response costs relating to NG's soil vapor and groundwater treatment system at the Park, which also remediated the Town's freon. *See* ECF No. 190 at ¶ 1. To now claim that the Facility is in the scope of the Litigation runs counter to the parties' Stipulation, the plain text of NG's counterclaims, the Federal Rules, and case law. *See Conservation L. Found., Inc. v. Shell Oil Co.*, 2023 WL 5434760, at *15 (D. Conn. Aug. 22, 2023) (denying discovery related to "*all* 'of Shell companies' facilities' beyond the [site relevant to the litigation]").

The Town's Motion also seeks information relating to substances beyond the scope of the parties' Stipulation. The Stipulation expressly "limit[s] discovery" to equitable considerations relevant to response costs at the Park, not just Freon-12 and Freon-22. The parties agreed in the Stipulation that contaminants relevant to this inquiry are "project VOCs," (***related*** to NG's operations) and "non-project VOCs," defined to include VOCs, such as Freon-12 and Freon-22, that are understood to be ***unrelated*** to NG's former activities and have been identified as originating from the area of the Town's former ice rink. *See* Stipulation at ¶ 3. NG produced hundreds of thousands of pages on this subject, such that all relevant information relating to the cleanup of VOCs, including freon, at the Park has already been provided to the Town.

Nevertheless, in contravention of the Stipulation, FRCP 26(b)(1), and case law concerning proportionality and relevance, the Town demands discovery relating to "all wastes of any kind."[3] The Town's requests are facially overbroad: substances such as PCBs, oils, and "all wastes of any kind" are untethered to valuing response costs for non-project VOCs versus project VOCs at the Park, and NG's remediation system does not treat them. *See Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 117 F.R.D. 283, 287 (D.D.C. 1986) (denying requests related to chemicals not at issue in the litigation because "the overbreadth of this interrogatory is obvious as to the scope of chemicals and drugs within its scope"); *see also Seneca Meadows, Inc. v. ECI Liquidating, Inc.*, 427 F. Supp. 2d 279, 300-01 (W.D.N.Y. 2006) (only liquid TCE, the compound at issue, was germane to response costs; defendant who deposited refuse at the site but not liquid TCE found not liable for response costs). Information regarding "reimbursements" for the purchase of all manufacturing supplies at the Facility, and "Navy audits" of these purchases is neither relevant nor proportional to NG's counterclaims, as further set forth herein. *See* ECF 194 Exhibit D, RFP Nos. 5, 6. *See also Conservation L. Found.*, *supra*, 2023 WL 5434760, at *12.

## II.     The Town's Arguments for Production Are Specious and Unavailing.

The Town's arguments in favor of compelling production fail. *First*, the Town misconstrues the relationship of the already-produced material and its overbroad requests to the Torres and Gore Factors. NG has already produced documents that divide the treatment of

---

[3] Further defined as "all chemicals used by [NG] *at the Facility* including, but not limited to, Vinyl Chloride, Trichloroethylene (TCE), Tetrachloroethylene (PCE), 1,4 dioxane and any and all other volatile organic compounds, solvents, oils and other chemicals or compounds," as well as "[a]ll Documents concerning construction, maintenance, or Disposal of Chemicals and metals used by [NG] in its manufacturing operations *at the Facility* including Polychlorinated Biphenyls (PCBs)." *See* ECF 194 Exhibit D, Definition of "Chemicals"; RFP No. 2 (emphasis added).

chemicals solely attributable to each party at the Park—project vs. non-project VOCs—consistent with, as cited in the Town's Motion, Torres Factor No. 1 (the extent to which costs are attributable to each party's waste), Gore Factor No. 2 (the amount of hazardous substances involved), Gore Factor No. 3 (the degree of toxicity), Gore Factor No. 4 (degree of involvement in contaminating the site), Torres Factor No. 2 (level of culpability), and Torres Factor No. 3 (degree of benefit from contaminating the site). This is in line with the parties' Stipulation acknowledging the importance of this distinction (and, indeed, Gore Factor No. 1, the ability of a party's release to be "distinguished"). *See* Stipulation at ¶ 3. The information provided is sufficient for the Court to adjudicate the parties' arguments on how these equitable factors apply to the remaining claims.

*Second*, the Town's attempt to shoehorn purchase, audit, and reimbursement records of manufacturing supplies into an equitable factor also fails. These records are *not* a proxy for "how much of each [chemical] [NG] disposed at the Park." ECF 194 at 2. Instead, records regarding Park contamination and remediation—which NG has already produced—are more than suitable for this purpose because it is clear for which of the Park VOCs NG was responsible and for which the Town was responsible. Courts have made such equitable determinations based on comparable records. *See Hatco Corp. v. W.R. Grace & Co.-Conn.*, 836 F. Supp. 1049, 1059, 1065 1088 (D.N.J. 1993), *opinion modified on reconsideration*, 849 F. Supp. 987 (D.N.J. 1994) ("[t]he causation inquiry begins with an attempt to identify the party who introduced the contamination to the site" and assigning responsibility "[b]ased on exclusive use" and "volumes of contaminated soil in the areas of environmental concern."). The Town never sought these records for its CERCLA claim when the same factors were at issue; there is no reason why these records are suddenly relevant.

*Third*, the Town's argument that it needs the records regarding unrelated chemicals to address equitable concerns falls flat. The Town cannot cite a single case where a court considered purchase records regarding chemicals that are **unrelated** to the cost recovery claim in connection with equitable factors. Here, moreover, discovery of unrelated substances is uncalled for given that the Town is the singular source of the Freon-12 and Freon-22 that NG has been remediating. NG is not seeking cost recovery for any other substances, rendering TOB's request for "manufacturing supplies," "all wastes" and "Chemicals" indefensible. *One Wheeler Rd. Assocs. v. Foxboro Co.*, 1995 WL 791937, at *10 (D. Mass. Dec. 13, 1995) (noting "the mutually exclusive use of TCE and PCE by Foxboro and U.S. Windpower and the disparate impacts [of] these two contaminants"). The volumes of VOCs at the Park, already produced, are more than sufficient (and far more accurate than purchase records at another property) to determine relative costs.

### III.    The Town's Requests for Sealed Documents Should Be Denied.

The Town also seeks information filed under seal in an unrelated litigation. ECF 194 Exhibit F, RFP Nos. 33, 34, 35, 36, 37, 38. These requests are irrelevant, as they relate to insurance matters in a litigation concerning the scope of specific insurance coverage. *See Bueno v. LR Credit 18, LLC*, 2017 WL 2712885, at *3-4 (E.D.N.Y. June 6, 2017) (denying "overbroad" motion to compel production of sealed documents from separate litigation as request "would impose disproportionate and undue burdens on the [Defendants] not justified by the speculative relevance to Plaintiff's individual claim" (internal quotation marks omitted)). Matters related to an insurance litigation are unrelated to the response cost allocation for freon relevant here.

U.S. Magistrate Judge Steven I. Locke
March 18, 2025
Page 4 of 4

Respectfully submitted,

Kayley McGrath

SIVE, PAGET & RIESEL, P.C.
*Attorneys for Northrop Grumman*
560 Lexington Avenue, 15th floor
New York, NY 10022
Phone: (212) 421-2150
Email:  kmcgrath@sprlaw.com