UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
TOWN OF OYSTER BAY, NEW YORK,

                       Plaintiff,                  **MEMORANDUM AND ORDER**
                                                 05-cv-1945 (DG)(SIL)
   -against-

NORTHROP GRUMMAN SYSTEMS CORP.,

                       Defendant.
-------------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this environmental damage-tort contribution action is Plaintiff Town of Oyster Bay, New York's (the "Town" or "Plaintiff") Motion to Compel Defendant Northrop Grumman Systems Corporation ("Grumman" or "Defendant") to answer certain interrogatories and produce certain documents. *See* Plaintiff's Letter Motion to Compel ("Plaintiff's Letter Motion" or "Pl. Letter Mot."), Docket Entry ("DE") [194]; Plaintiff's Motion to Compel ("Plaintiff's Motion" or "Pl. Mot."), DE [199]. The scope of Plaintiff's Motion is limited to Grumman's counterclaim against the Town for contribution under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). *See* Memorandum in Support of Plaintiff's Motion ("Pl. Mem."), DE [199-1], at 2. Specifically, the Town seeks documents and information pertaining to: (i) "Grumman's chemical purchase records from its manufacturing operations"; (ii) "information regarding Grumman's handling of Freons at [Defendant's Bethpage manufacturing facility]"; and (iii) "documents filed under seal in a lawsuit between Grumman and its insurers concerning [Grumman's] Bethpage campus[,]" all related

to a facility operated within the Town. *Id.* The Court has also identified three other categories of requests listed in Plaintiff's Motion, enumerated below. The motion "focus[es] only on volatile organic compounds" ("VOCs"), which the Town defines as "a category [of contaminants] that includes [trichloroethylene ("TCE")], other chemicals used as solvents in industrial applications, and Freons." *Id.* at 5. Defendant opposes because it argues the Town has already received the discovery it seeks, and on relevance grounds. *See* Defendant's Opposition ("Def. Opp."), DE [200].

For the reasons set forth herein, the Court grants Plaintiff's Motion in part and denies it in part. Grumman is directed to produce documents responsive to Request for Production ("RFP") 2 with respect to VOCs Grumman disposed of adjacent to the Bethpage Community Park (the "Park"), within the geographic area remediated by the two interim remedial measures ("IRMs") at issue in this litigation, the groundwater IRM ("Groundwater IRM") and soil gas IRM ("Soil Gas IRM"). Plaintiff's Motion is otherwise denied, with leave to refile only as to documents currently sealed in *Travelers Indemnity Co. v. Northrop Grumman Corp.*, Case No. 12-cv-3040 (S.D.N.Y.) pending the resolution of the Town's efforts to unseal documents in that action and the related action *The Travelers Indemnity Company et al v. Northrop Grumman Corporation et al.*, Case No. 16-cv-08778 (S.D.N.Y.) (collectively, the "Travelers Litigation").

## I.    BACKGROUND

### A. <u>Factual Background</u>

Because this case has been pending since 2005, the Court provides only the background necessary to decide this motion. The facts herein are taken from this

Court's Memorandum and Order on the parties' cross-motions for summary judgment, *see Town of Oyster Bay v. Northrop Grumman Sys. Corp.*, No. 05-CV-1945 (TCP), 2009 WL 10691086 (E.D.N.Y. May 14, 2009), *as amended on reconsideration*, No. 05-CV-1945 (TCP), 2010 WL 11623604 (E.D.N.Y. May 21, 2010) (the "Summary Judgment Order"), and from the parties' declarations attached to their briefing on Plaintiff's Motion, and are accepted as true for purposes of this decision.

The Park is located in Bethpage, Town of Oyster Bay, New York.  Summary Judgment Order at *1.  The land on which the Park is located (the "Park Land") was formerly owned by Grumman's predecessor in interest, the Grumman Aircraft Engineering Corporation ("Grumman Aircraft").  *Id.*  Beginning in an unspecified year in the 1940's, Grumman Aircraft conducted aircraft manufacturing and testing operations at two sites (collectively, the "Facility") pursuant to a contract between the United States Navy (the "Navy")[1] that were adjacent to the Park Land.  *Id.* at *1, *5. Grumman Aircraft deposited chemical byproducts from its activities in the Park Land from approximately 1950 to 1962.  *Id.* at *4-7.  As a result of these operations, VOCs have been found in the Park, "primarily from solvents used in airport and aerospace manufacturing[.]"  *See* Declaration of Edward J. Hannon in Opposition to Plaintiff's Motion ("Hannon Decl."), DE [200-1], at ¶ 11; Declaration of David Shea in Support of Plaintiff's Motion ("Shea Decl."), DE [199-4], at ¶ 8.  An environmental assessment prepared in 2013 by New York State Department of Environmental Conservation (the

---

[1] The Navy and the United States of America were defendants in this action until the claims against them were dismissed at summary judgment.  *See* Summary Judgment Order; Memorandum and Order on Motion for Reconsideration, DE [106].

"DEC") of an area including the Park found that TCE, which as explained above is a VOC, was a primary soil contaminant there.  *See* Hannon Decl., Ex. A, DE [200-2] at 13.  Moreover, in the Travelers Litigation, Grumman acknowledged regularly using TCE at the Facility.  *See Travelers Indem. Co. v. Northrop Grumman Corp.*, 3 F. Supp. 3d 79, 84 (S.D.N.Y. 2014), *aff'd*, 677 F. App'x 701 (2d Cir. 2017).  From approximately 1950 to 1962, other industrial byproducts that are not at issue in Plaintiff's Motion were also deposited by Grumman Aircraft in the Park Land.  *See* Summary Judgment Order at *5-7.  Grumman Aircraft transferred the Park Land to Plaintiff in October 1962, but continued to manufacture aircraft at the Facility until an unspecified date. *Id.* at *1; Shea Decl. at ¶ 11.

"Decades later," although no date is specified, Grumman "discovered . . . that chemicals used as part of manufacturing operations for the [Navy] during World War II were present in areas of Park soil, soil vapor and groundwater."  Hannan Decl. at ¶ 7.  Data collected by the United States Environmental Protection Agency ("EPA") showed that in 1987, Grumman released nearly 1.8 million pounds of VOCs into the air and shipped over 400,000 pounds of VOCs "from its Bethpage facility off site for disposal/recycling," although Plaintiff does not state that those particular VOCs were deposited in the Park Land.  Shea Decl. at ¶ 10.  Defendant has worked with the DEC, the EPA, the Navy and "other stakeholders" to remediate the contamination to the Park, and in 2013 the DEC classified 3.5 acres of the 18-acre Park as "Operable Unit 3," subject to regulation by the DEC.  Hannan Decl. at ¶¶ 7-9.  "After DEC's designation, [Grumman] undertook extensive sampling in the Park and access road

4

and discovered, among other contaminants, VOCs in soil, soil vapor, and groundwater." *Id.* at ¶ 11. While Defendant used a type of Freon known as Freon-113, a VOC, at the Facility, the DEC determined that Freon-113 was not found in the Park, and Grumman's subsequent sampling has not detected Freon-113 "above regulatory standards." Declaration of Kayley McGrath in Opposition to Plaintiff's Motion ("McGrath Decl."), DE [200-5] at ¶ 31.

"Under [the DEC's] authority, [Grumman] has spent tens of millions of dollars to investigate and remediate VOCs and soil vapors in soil and groundwater in and adjacent to the Park," including by installing borings, taking soil and groundwater samples, and constructing wells to monitor, extract and remediate VOCs. Hannan Decl. at ¶ 13. In 2005, Grumman and the DEC entered into a consent order for "investigation of the Park and an adjacent [Grumman]-owned access road." *Id.* In 2008 and 2009, Defendant constructed two remediation systems "along the southern boundary" of the Park comprised of extraction wells: (i) the Groundwater IRM, which captures groundwater to be treated to remove VOCs and then replaced; and (ii) the Soil Gas IRM, which extracts soil vapors to prevent VOC vapors from migrating offsite. *Id.* at ¶¶ 14-16. "Both systems only treat VOCs and no other substances." McGrath Decl. at ¶ 3. Together, these systems have removed over 3,000 pounds of VOCs from the Park, and they continue to operate. Shea Decl. at ¶¶ 21-22. In 2014, Defendant and the DEC entered into a consent order "for remediation of VOCs (and other substances) at the Park." Hannan Decl. at ¶ 13.

After the Park Land was transferred to the Town, at some time prior to 1972, Plaintiff built an ice rink in the Park. *See* Summary Judgment Order at *8. At an unspecified time, another ice rink was constructed, which no longer exists. *See* Hannan Decl. at ¶¶ 18-23 (referring to two former ice rinks). In March 2005, the Town entered into a consent order with the DEC based on its intent to construct a new ice rink and other facilities in the Park. Summary Judgment Order at *2. In November 2005, Plaintiff submitted a remediation and cleanup plan for the Park to the DEC, which the DEC approved with modifications. *Id.* at *3-4. As a result, the Town spent over $22,000,000 investigating and remediating the Park. *Id.* at *4. In 2007, the Town replaced the original ice rink with the current ice rink. *See* Shea Decl. at ¶ 7. Because of leaks, the former ice rinks resulted in contamination by the VOCs Freon-12 and Freon-22 within the area that is being remediated by Defendant's Groundwater Soil Gas IRMs. *See* Hannan Decl. at ¶¶ 4, 18-22; Ex. A at A-8. Plaintiff asserts that the Groundwater IRM collected Freon-12 and Freon-22 from 2008-2017, when it stopped detecting their presence, while Grumman counters that "there was Freon from the Town ice rinks extracted and treated by the [Groundwater IRM] until early 2019." *See* Shea Decl. at ¶ 19; Hannan Decl. at ¶ 18. The Soil Gas IRM continues to collect Freon-12 and Freon-22. Shea Decl. at ¶ 19.

In 2024, Grumman and the Town discovered 22 drums of "toxic waste" buried beneath the Park, encased in concrete vaults. Shea Decl. at ¶ 23. These drums each contained VOCs, many of which are the same VOCs that have been found in the

surrounding Park soil, soil gas and groundwater. *Id*. at ¶ 25. Plaintiff argues that Defendant deposited these barrels. *See* Pl. Mem. at 3.

### B. Procedural History

By way of Complaint dated April 21, 2005, DE [1], modified by Amended Complaint dated June 14, 2005, DE [3], and Second Amended Complaint ("SAC") dated May 22, 2006, DE [29], Plaintiff brought this action under CERCLA, 42 U.S.C. §§ 9601, *et seq.*, and New York state law to recover response costs incurred by the Town related to the release of hazardous substances at or from the Park. *See* SAC at ¶ 1. Relevant here, Grumman asserted multiple counterclaims pursuant to various provisions of CERCLA, *see* Answer, DE [31], of which only two, both for contribution, remain pursuant to a stipulation by the parties:

> (i) Defendant's response costs incurred in "investigating, designing, constructing, and/or operating [the Soil Gas IRM] in or adjacent to the [Park] to remediate vapors arising from or related to freon used at, disposed at, released from, and/or arising from the former and/or existing Town ice rink(s) on the [Park], including but not limited to Town operation thereof[;]" and

> (ii) Grumman's response costs incurred in "investigating, designing, constructing, and/or operating [the Groundwater IRM] in or adjacent to the [Park] to remediate groundwater contaminated with freon used at, disposed at, released from, and/or arising from the former and/or existing Town ice rink(s) on the [Park], including but not limited to Town operation thereof."

Stipulation, DE [190]. On March 31, 2009, the Court granted Defendant's motion for summary judgment against Plaintiff and denied the Town's cross-motion for summary judgment against Grumman. *See* Summary Judgment Order. On March 31, 2010, the Court denied Plaintiff's motion for reconsideration, DE [101]. *See*

Memorandum and Order, DE [106].  On March 14, 2025, the Town filed Plaintiff's Letter Motion, and the Court conducted oral argument on April 22, 2025.  *See* Minute Order, DE [198].  At oral argument, the Court ordered more fulsome briefing, which the parties filed on June 24, 2025.  *See id.*; Plaintiff's Motion; Defendant's Opposition; Plaintiff's Reply in Support of Plaintiff's Motion ("Pl. Reply"), DE [201].

For the reasons set forth herein, the Court grants Plaintiff's Motion in part and denies it in part.  Grumman is directed to produce documents responsive to RFP 2 with respect to VOCs Grumman disposed of adjacent to the Park, within the geographic area remediated by the Groundwater and Soil Gas IRMs.  Plaintiff's Motion is otherwise denied, with leave to refile only as to documents currently sealed in the Travelers Litigation, pending the resolution of the Town's efforts to unseal documents in those actions and the parties' related efforts to confer as to those documents.

### C. __The Requests at Issue__

The Requests for Production ("RFPs") and Interrogatories at issue in Plaintiff's Motion (the "Disputed Requests") break down into the following categories:

- Defendant's maintenance and disposal of manufacturing chemicals used at the Facility – RFP 2;
- Grumman's chemical purchase records from its manufacturing operations – RFPs 5 and 6;
- Information regarding Grumman's handling of Freons at the Facility – RFPs 14, 15, 17, 18, 27; Interrogatories 2, 4, 6, 7, and 9;
- Documents related to consent orders and agreements into which Grumman entered with respect to the Facility or the Park – RFP 26;
- An identification and description of all remedial systems that have operated or are now operating at and in the vicinity of the Facility or the Park Property – Interrogatory 10; and

8

- Documents filed under seal in summary judgment proceedings in the Travelers Litigation – RFPs 33-38.

*See* Plaintiff's Memorandum at 11.  On June 5, 2025, the Town filed a motion to intervene in the Travelers Litigation for purposes of obtaining disclosure of documents sealed in that action.  *See Travelers Indemnity Company*, Case No. 12-CV-3040, DE [709] (S.D.N.Y. June 5, 2025).  The court granted Plaintiff's motion to intervene, *see The Travelers Indemnity Company v. Northrop Grumman Corp.*, Case No. 16-CV-08778, DE [495] (S.D.N.Y. June 10, 2025) and the Town's application to unseal the documents at issue in Plaintiff's Motion is still pending.  *See id.*, DE [502] (S.D.N.Y. July 14, 2025).

## II.    LEGAL STANDARDS

### A. <u>Motions to Compel</u>

Federal Rule of Civil Procedure 26(b)(1) provides for discovery of matters that are nonprivileged, and are relevant and proportional to the needs of the case considering the importance of the issues, the amount in controversy, relative access to information, the parties' resources, the importance of the discovery to resolving the issues, and the relative burden of the expense involved versus the likely benefit.  *See* Fed. R. Civ. P. 26(b)(1).  Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be

disproportionate." *Id.* at *14. Further, "[t]he party seeking the discovery must make a *prima facie* showing, that the discovery sought is more than merely a fishing expedition." *Evans v. Calise*, No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994); *see Mandell v. The Maxon Co., Inc.*, No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007) ("[T]he party seeking discovery bears the burden of initially showing relevance.").

It is well-established that "[m]otions to compel are left to the court's sound discretion." *Mirra v. Jordan*, No. 13-cv-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

**B. Allocation of CERCLA Response Costs**

The Town points to two sets of factors courts often use to determine allocation under CERCLA: the *Torres* factors, set forth in *United States v. Davis*, 31 F. Supp. 2d 45 (D.R.I. 1998)[2], *aff'd*, 261 F.3d 1 (1st Cir. 2001), and the *Gore* factors, originating from CERCLA's legislative history[3]. *See Yankee Gas Servs. Co. v. UGI Utilities, Inc.*, 852 F. Supp. 2d 229, 247 (D. Conn. 2012) ("Courts generally trot out [those] two lists of factors when considering allocation under CERCLA."); Pl. Mem. at 2-3.

The *Torres* factors are:

---

[2] The *Torres* factors are named for Judge Ernest C. Torres, who authored this opinion.

[3] "These so-called '*Gore* Factors' come from the legislative history surrounding three failed bills (one sponsored by then-Congressman Al Gore) that together informed CERCLA when it was enacted in 1980." *MPM Silicones, LLC v. Union Carbide Corp.*, 561 F. Supp. 3d 293, 321 (N.D.N.Y. 2021) (citation omitted).

1. The extent to which cleanup costs are attributable to waste[ ] for which a party is responsible[;]

2. The party's level of culpability[;]

3. The degree to which the party benefitted from disposal of the waste[;] [and]

4. The party's ability to pay its share of the cost.

*Id.* (citing *Davis*, 31 F. Supp. 2d at 63).  The *Gore* factors, which overlap somewhat, are:

1. The ability of the party to demonstrate that [its] contribution to the release can be distinguished;

2. The amount of hazardous substance involved [. . . .];

3. The degree of toxicity of the hazardous substance involved;

4. The degree of involvement of the [party] in the manufacture, treatment, transport or disposal of the hazardous substance; and

5. The degree of cooperation between the [party] and the . . . [G]overnment in preventing harm to public health or the environment from occurring from a release[, including] efforts to mitigate damage after a release occurs.

*Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 130 (2d Cir. 2010) (citing S.Rep. No. 96–848, at 345–46 (1980)).  Defendant does not contest the application of these factors at this stage.  *See* Def. Opp. at 3.

## III.    DISCUSSION

Applying the standards set forth above, the Town's Motion is granted in part and denied in part.  The Court considers each of the categories of Disputed Requests in turn.

A. **Defendant's Maintenance and Disposal of Manufacturing Chemicals Used At The Facility.**

Plaintiff's RFP 2 seeks "All Documents concerning construction, maintenance, or Disposal of Chemicals and metals used by Grumman in its manufacturing operations at the Facility including Polychlorinated Biphenyls (PCBs)," which are not VOCs. Pl. Letter Mot., Ex. D at RFP 2; *see* Pl. Mem. at 5. The Town argues that these documents are relevant to: (i) determining the comparative volume and toxicity of Plaintiff's and Defendant's contamination of the Park, *see* Pl. Mem. at 3, (ii) comparing the parties' culpability for their respective contamination, *see id.*, and (iii) assessing whether Grumman's Groundwater and Soil Gas IRMs are "larger, longer lasting, and more expensive" than needed to remediate the Freons for which Defendant seeks contribution in its counterclaims. *See id.* at 19-20. Grumman counters that "[r]ecords of chemicals used at the Facility that were not disposed of at the Park and, thereby, not remediated by the two IRMs at issue, are not now and have never been relevant," and that non-VOC chemicals are irrelevant to Defendant's counterclaims. *See* Def. Opp. at 12-13. Moreover, Defendant represents that it has already produced "all documents and information relating to VOCs (including Freon) in any way related to the Park" and "documents regarding hazardous substances brought to the Park from the [Facility] by [Grumman]." McGrath Decl. at ¶¶ 36, 38 n.2. The Court grants the Town's motion with respect to RFP 2 in part.

Initially, as explained above, the only remaining causes of action in this litigation are for contribution related to Defendant's response costs with respect to the Groundwater and Soil Gas IRMs constructed "in or adjacent to" the Park, which

12

treat only VOCs.  *See* Stipulation, DE [190]; McGrath Decl. at ¶ 3.  Documents that do not include information about Grumman's use of VOCs, but are related only to non-VOC chemicals, like PCBs, are not relevant to Defendant's counterclaims.  *See Seneca Meadows, Inc. v. ECI Liquidating, Inc.*, 427 F.Supp.2d 279, 300-01 (W.D.N.Y. 2006) (where the focus of a litigation was the presence of TCE, and there was no evidence that a defendant had deposited TCE in the site at issue, that defendant was not responsible for contribution under CERCLA).  Accordingly, the Court concludes that documents that do not involve VOCs will not produce facts "of consequence in determining th[is] action." Fed. R. Evid. 401(b).  Plaintiff's Motion is therefore denied with respect to any documents that do not include information about VOCs deposited by Defendant.

In this regard, Grumman represents that it has produced all documents concerning VOCs deposited into the Park.  McGrath Decl. at ¶¶ 36, 38 n.2.  The Court will not direct Defendant to do so again.  *See Suffolk County Water Authority v. The Dow Chemical Company*, No. 17-CV-6980 (NG), 2022 WL 2819107, at *1 (E.D.N.Y. July 19, 2022).  The parties' Stipulation, however, indicates that the Groundwater and Soil Gas IRMs are operated "in or adjacent to" the Park, *see* Stipulation, and they were constructed "along the southern boundary" of the Park.  *See* Hannan Decl. at ¶¶ 14-16.  Moreover, Defendant asserts that it "has spent tens of millions of dollars to investigate and remediate VOCs and soil vapors in soil and groundwater in *and adjacent to* the Park." *Id.* at ¶ 13 (emphasis added).  If the Soil Gas and Groundwater IRMs remediate areas outside of the Park boundary, VOCs in those areas will impact

the costs for which Defendant seeks contribution.  Grumman acknowledges that "the Court will . . . need to determine which costs associated with the soil vapor and groundwater remedial systems should be borne by the Town, and which should be borne by [Defendant]."  Def. Opp. at 2-3.  As a result, information about VOCs that Grumman disposed of adjacent to the Park is relevant to, at a minimum, the first *Torres* factor, "the extent to which cleanup costs are attributable to wastes for which a party is responsible," *see Davis*, 31 F. Supp. 2d at 63, and to the second and fourth *Gore* factors, "the amount of [VOCs] involved" and "the degree of involvement of the [party] in the manufacture, treatment, transport or disposal of the [VOCs]."  *See Niagara Mohawk Power Corp.*, 596 F.3d at 130.  Accordingly, Defendant is directed to produce documents responsive to RFP 2 with respect to VOCs Grumman disposed of adjacent to the Park, within the geographic area remediated by the Groundwater and Soil Gas IRMs.

## B. <u>Grumman's Chemical Purchase Records from its Manufacturing Operations</u>

RFPs 5 and 6 seek documents and information relating to Defendant's purchases of "manufacturing supplies."  Pl. Letter Mot., Ex. D at RFPs 5, 6.  The Town argues that these documents are relevant "to establish how much of each chemical Grumman purchased and therefore approximately how much it disposed at the Park."  Pl. Mem. at 12.  The Court agrees with Defendant that this request is overbroad, particularly because it seeks records over 50 years of activity, and denies Plaintiff's Motion with respect to these requests.  *See* Def. Opp. at 11.  As explained above, the only remaining issues in this case are Grumman's response costs with

14

respect to remediating VOCs using its Groundwater and Soil IRMs.  *See* Stipulation. Given the limited remaining issues, the Town's requests in this category are disproportionate to the needs of the case.  *See Sportvision, Inc. v. MLB Advanced Media, L.P.*, No. 18-CV-03025 (PGG) (VF), 2022 WL 2817141, at *3 (S.D.N.Y. July 19, 2022) (denying plaintiff's request for information about the "stream of revenue" for defendant's products not at issue in the litigation).

**C.** **Information Regarding Grumman's Handling of Freons at the Facility**

RFPs 14, 15, 17, 18, and 27 and Interrogatories 2, 4, 6, 7, and 9 seek information about Grumman's use and disposal of Freon from the Facility.  *See* Pl. Letter Mot., Exs. C, E, F.  In Plaintiff's Letter Motion, the Town specifies that it seeks information about Freon-113, a type of Freon that is distinct from the Freon-12 and Freon-22 linked to the ice rinks Plaintiff installed in the Park.  *See id.* at 3 n.3. Plaintiff argues that it "seeks information about Grumman's Freon use at the Facility to determine whether Grumman is responsible for Freons found at the Park."  Pl. Mem. at 12.  As explained above, the only remaining causes of action in this litigation are for contribution concerning Grumman's response costs associated with the Soil Gas and Groundwater IRM's remediation of soil and groundwater in and adjacent to the Park.  Freon-113 that was not disposed of in or adjacent to the Park is not relevant.  Defendant also represents that it has already produced all responsive information.  McGrath Decl. at ¶ 36.  Accordingly, the Town's motion to compel on this basis is denied.

**D. Documents Related to Consent Orders and Agreements Into Which Grumman Entered with Respect to the Facility or The Park**

The Town's RFP 26 seeks "All Documents and Communications relating to consent orders, consent decrees, Brownfield Cleanup Agreements, and settlement agreements entered into by Grumman concerning the Facility or Park Property." *See* Pl. Letter Mot., Ex. E. at RFP 26. Plaintiff's Memorandum does not specifically address this RFP or explain the relevance of the information it seeks. *See generally* Pl. Mem. Accordingly, the Court concludes that the request is abandoned, and Plaintiff's Motion is denied with respect to RFP 26. *See Nat'l Rifle Ass'n of Am. v. Cuomo*, 332 F.R.D. 420, 446 (N.D.N.Y. 2019).

**E. An Identification and Description of All Remedial Systems**

The Town's Interrogatory 10 asks Grumman to "[i]dentify and describe all remedial systems that have operated or are now operating at and in the vicinity of the Facility or the Park Property." *See* Pl. Letter Mot., Ex. C at Interrogatory 10. In its response, Defendant directs Plaintiff to its response to Interrogatory 5, which identifies, *inter alia*, the Soil Gas and Groundwater IRMs, and to a publicly available DEC administrative record containing descriptions thereof. *See* Pl. Letter Mot., Ex. G at Interrogatories 5, 10. The Town has not explained why this response is deficient. Accordingly, Plaintiff's Motion is denied in this respect. *See Sibley v. Choice Hotels Int'l*, No. CV 14-634 (JS)(AYS), 2015 WL 9413101, at *5 (E.D.N.Y. Dec. 22, 2015).

**F. Documents filed under seal in summary judgment proceedings in the Travelers Litigation**

Finally, Plaintiff seeks documents filed under seal in summary judgment proceedings in the Travelers Litigation. *See* Pl. Mem. at 23-25. As explained above,

16

on June 5, 2025, the Town filed a motion to intervene in the Travelers Litigation for purposes of obtaining disclosure of documents sealed in that action. *See Travelers Indemnity Company*, Case No. 12-CV-3040, DE [709] (S.D.N.Y. June 5, 2025). The court granted Plaintiff's motion to intervene, *see The Travelers Indemnity Company v. Northrop Grumman Corp.*, Case No. 16-CV-08778, DE [495] (S.D.N.Y. June 10, 2025) and the Town's application to unseal the documents at issue in Plaintiff's Motion is still pending. *See id.*, DE [502] (S.D.N.Y. July 14, 2025). Further, in Plaintiff's Reply, the Town states that the parties "are currently in the process of conferring regarding production of [these documents] and [it] will promptly advise the Court should the parties fail to come to an agreement." Pl. Reply at 2. Accordingly, the Court denies Plaintiff's Motion without prejudice with respect to this category of documents while the Town's application in the Southern District of New York is pending and while the parties confer.

## IV.    CONCLUSION

For the reasons set forth herein, Plaintiff's Motion is granted in part and denied in part. Grumman is directed to produce documents responsive to RFP 2 with respect to VOCs Grumman disposed of adjacent to the Park, within the geographic area remediated by the Groundwater and Soil Gas IRMs. Plaintiff's Motion is otherwise denied, with leave to refile only as to documents currently sealed in the Travelers Litigation pending the resolution of the Town's efforts to unseal documents in those actions and the parties' related conference on this issue.

Dated:    Central Islip, New York
          July 28, 2025                    **SO ORDERED:**

                                           /s/ Steven I. Locke
                                           STEVEN I. LOCKE
                                           United States Magistrate Judge